**FILED**

August 12, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____NM_____
                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOAQUIN DELGADO VALENCIA,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

SA-23-CV-076-RCL
SA-18-CR-600-RCL-1

## MEMORANDUM OPINION

Before the Court are Movant Joaquin Delgado Valencia's *pro se* Motion [ECF No. 306] Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence; the Government's Response [ECF No. 308] in opposition thereto; Mr. Valencia's pending Amended § 2255 Motion [ECF No. 314]; and the Government's Response to the Amended § 2255 Motion. [ECF No. 315]. For the following reasons, Mr. Valencia's Amended § 2255 Motion will be denied.

## I.    BACKGROUND

This case arises from Mr. Valencia's involvement in a drug-trafficking organization that moved kilogram quantities of methamphetamine, cocaine, heroin, and other narcotics from Mexico to San Antonio, Texas, and to various locations across the United States. Mr. Valencia was a leader and organizer of the drug-trafficking organization, which facilitated smuggling activity between the Mexico-based Jalisco New Generation Cartel ("JNGC") and the San Antonio-based Texas Mexican Mafia. The JNGC is a transnational organized crime group that utilizes individuals and entities such as Mr. Valencia and his drug-trafficking organization to facilitate the import and export of narcotics, firearms, and bulk-currency on a global scale.

Mr. Valencia established his drug-trafficking organization at an automotive shop in San Antonio. Surveillance and pole camera video showed that Mr. Valencia and co-defendants Xavier

Toca, Horlando Daniel Cerpas, and Elmer Flores frequented the location. Trial testimony revealed that as early as January 2017, Mr. Valencia facilitated multi-narcotic transactions and was occasionally trusted as a cartel operative tasked to help export proceeds from narcotic sales via hidden compartments inside vehicles bound for the JNGC's main source of supply in Michoacán, Mexico. Testimony further revealed that Mr. Valencia imported liquid methamphetamine hidden within auxiliary gas tanks inside large pick-up trucks and exported semiautomatic firearms by concealing them in car audio speaker boxes.

During a four-month period leading up to the seizure that gave rise to this criminal case, Mr. Valencia's drug-trafficking organization was responsible for the flow of approximately twenty kilograms of methamphetamine from Mexico through San Antonio and to other parts of the country on a weekly basis. Narcotics proceeds pending exportation were also stored at locations where Mr. Valencia resided. On August 9, 2018, agents obtained and executed a federal search warrant at the automotive shop, where they encountered Mr. Valencia, Mr. Cerpas, and Mr. Flores. Agents discovered an active methamphetamine conversion lab in progress, including a room dedicated to the "cooking" of the liquid form of methamphetamine to finalize it into a usable product. Agents discovered firearms in this room next to a bucket of liquid methamphetamine.

Agents seized 9,699 grams of finished methamphetamine, or "ice," (net weight); 13.7 grams of liquid methamphetamine (net weight); eight assault rifles; two pistols; ammunition; and magazines. Further investigation revealed these rifles were bound for Mexico with the intention of arming JNGC members. The seizure yielded the equivalent of 9.2 kilograms of methamphetamine (actual), and the firearms were linked to an on-going investigation of a "straw purchase" firearms trafficking scheme.

On August 10, 2018, agents executed a federal search warrant at Mr. Valencia's apartment and recovered approximately $26,215.00 from a box found inside of his bedroom. Testimony confirmed this money was sourced from drug proceeds and was pending exportation to JNGC's main source of supply in Mexico. A review of Mr. Valencia's immigration history revealed he was first ordered deported on December 27, 1999, and he was removed in January 2000, January 2009, and June 2013. Mr. Valencia was not granted permission to reapply for admission from the Attorney General of the United States after any of these removals.

After Mr. Valencia was arrested and charged via a criminal Complaint, a U.S. magistrate judge appointed attorney Genaro R. Cortez to represent Mr. Valencia. Order Appointing Counsel, ECF No. 9. Mr. Valencia and Mr. Toca were later charged in a ten-count Second Superseding Indictment returned on February 5, 2020. ECF No. 145. Specifically, the Second Superseding Indictment charged Mr. Valencia with the following:

Count One: possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A);

Count Two: conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, 5 kilograms or more of cocaine, and 1 kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846;

Count Three: conspiracy to import 500 grams or more of methamphetamine, 5 kilograms or more of cocaine, and 1 kilogram or more of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(G), and 963;

Count Four: conspiracy to distribute 500 grams or more of methamphetamine, 5 kilograms or more of cocaine, intending and knowing that said controlled substance(s) would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 963, and 960(a)(3) and (b)(1)(B & G);

Count Five: conspiracy to possess firearms in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c)(1) and (o);

Count Six: possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924 (c)(1)(A)(i);

Count Seven: conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (ii) and 1956(h);

Count Eight: felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2);

Count Nine: illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) & (b)(2); and

Count Ten: alien in possession of a firearm, in violation of 18 U.S.C. 922(g)(5) and 924(a)(2).

Mr. Valencia declined the Government's plea offers at a hearing pursuant to *Lafler v. Cooper*, 566 U.S. 156 (2012), and proceeded to trial on the Second Superseding Indictment. On February 28, 2020, a jury found Mr. Valencia guilty of all counts. Verdict, ECF No. 182.

Thereafter, a U.S. Probation Officer prepared an initial pre-sentence report. Initial Presentence Report, ECF No. 202. Through counsel, Mr. Valencia submitted written objections to the PSR, and the U.S. Probation offer issued a revised report. Revised Presentence Report, ECF No. 218 ("PSR"). The PSR grouped Counts One, Two, Three, Four, and Seven for the purpose of calculating the Guidelines sentence pursuant to U.S.S.G. § 3D1.2(d). *Id.* ¶ 21. Counts Five, Eight and Ten embody conduct that the PSR treated as a specific offense characteristic in, or other adjustment to, the Guideline applicable to another count or counts, pursuant to § 3D1.2(c). *Id.* ¶ 22.[1]

For Count Group One (Possession with Intent to Distribute 500 Grams or More of Methamphetamine), the PSR calculated a base offense level of 38 pursuant to § 2D1.1(a)(5), based on 184,444.00 kg of converted drug weight. *Id.* ¶ 23. The PSR further applied a two-point upward adjustment pursuant to § 2D1.1(b)(5) because Mr. Valencia had knowledge that the

---

[1] However, pursuant to § 2K2.4, cmt. 4 the PSR did not apply a weapon enhancement in the Guideline for the underlying offense due to Mr. Valencia's Count Six conviction for possession of a firearm in furtherance of a drug trafficking crime. *Id.*).

4

methamphetamine was being imported unlawfully from Mexico, and he was not subject to a mitigating-role adjustment under § 3B1.2. *Id.* ¶ 24. The PSR applied another two-level upward adjustment pursuant to § 2D1.1(b)(12) because Mr. Valencia maintained a premises for the purpose of manufacturing or distributing a controlled substance. *Id.* ¶ 25. The PSR applied a four-level upward adjustment pursuant to § 3B1.1(a) because Mr. Valencia was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. *Id.* ¶ 27. The PSR arrived at an adjusted offense level of 46 as to Count Group One. *Id.* ¶ 29.

As to Count Six (Possession of at Least One Firearm in Furtherance of Drug Trafficking Crimes), the PSR calculated a Guidelines sentence of a minimum of five years of imprisonment, (the term of imprisonment required by statute) to be served consecutively pursuant to § 2K2.4. *Id.* ¶ 30. As to Count Nine (Illegal Re-entry into the United States) the PSR calculated a base offense level of 8, pursuant to § 2L1.2(a). *Id.* ¶ 36. The PSR applied a four-level upward adjustment pursuant to § 2L1.2(b)(2)(D) based on Mr. Valencia's prior 2009 felony conviction for possession of a narcotic controlled substance. *Id.* ¶ 37. The PSR arrived at an adjusted offense level of 12 as to Count Nine. *Id.* ¶ 41.

The PSR applied a multiple count adjustment pursuant to § 3D1.4(a)-(c) and arrived at a combined adjusted offense level of 46, pursuant to § 3D1.4. *Id.* ¶¶ 42–45. The PSR did not award a downward adjustment for acceptance of responsibility because Mr. Valencia did not demonstrate acceptance of responsibility for the offense. *Id.* ¶ 47. The PSR arrived at a total offense level of 43 pursuant to Chapter 5, Part A (cmt. n.2) because Mr. Valencia's total offense level was calculated in excess of 43. *Id.* ¶ 48.

As to Counts One through Four, Mr. Valencia faced a minimum term of imprisonment of ten years and a maximum term of life. *Id.* ¶ 78. As to Counts Five, Seven, and Nine, Mr. Valencia

faced a maximum term of imprisonment of twenty years. *Id.* As to Count Six, Mr. Valencia faced a minimum term of imprisonment of five years and a maximum term of life, to be imposed consecutively. *Id.* As to Counts Eight and Ten, Mr. Valencia faced a maximum term of imprisonment of ten years. *Id.* Based upon a total offense level of 43 and a criminal history category of III, the PSR calculated a Guidelines imprisonment range of life. *Id.* ¶ 80. As to Count Six, the Guideline sentence was the five-year minimum term of imprisonment required by statute. *Id.*

Through counsel, Mr. Valencia submitted a sentencing memorandum challenging the PSR's enhancements for maintaining a premises and acting as a leader or organizer. (ECF No. 215). The Court overruled Mr. Valencia's objections and sentenced him to 480 months of imprisonment, followed by fifteen years of supervised release, and a $1,000.00 special monetary assessment. Judgment and Commitment, ECF No. 237.

A magistrate judge appointed attorney Juan Manuel Gonzalez to represent Mr. Valencia in his appeal to the Fifth Circuit Court of Appeals. Order of June 12, 2020, ECF No. 240. Through counsel, Mr. Valencia argued that this Court abused its discretion by denying his motion for a mistrial. He further challenged his sentence on the grounds that this Court erred in applying the four-level leader/organizer enhancement under § 3B1.1(a) and that his sentence is unreasonable because it is greater than necessary to achieve the goals listed in 18 U.S.C. § 3553(a). On October 5, 2021, the Fifth Circuit affirmed Mr. Valencia's conviction and sentence in a *per curiam* opinion. Judgment of USCA, ECF No. 301.

On June 7, 2022, the Clerk received and docketed Mr. Valencia's motion to compel, wherein Mr. Valencia sought an order compelling Mr. Gonzalez to provide him with various

documents related to his criminal case.[2]  Pro Se Mot. to Compel, ECF No. 302. On October 12, 2022, the Court denied the motion to compel. Order of Oct. 12, 2022, ECF No. 303.

On January 3, 2023, the Clerk received and docketed Mr. Valencia's motion seeking disciplinary sanctions against Mr. Cortez, Mr. Valencia's trial attorney.  Pro Se Mot. for Sanctions, ECF No. 305.  In the motion, Mr. Valencia complained that Mr. Cortez refused to review discovery materials with him, thus preventing Mr. Valencia from participating in his own defense.  *Id.*  Mr. Valencia further asserted that Mr. Cortez accepted a cash money bribe from a member of the cartel in exchange for Mr. Valencia's case file and revealed confidential information to law enforcement. *Id.*  Mr. Valencia further asserted that Mr. Cortez adamantly tried to convince Mr. Valencia to plead guilty and not disclose that he was forced to work for the cartel based on threats and coercion or pursue a duress defense.  *Id.*  Mr. Valencia further alleged that Mr. Cortez and Mr. Gonzalez ignored his requests for a copy of the case file to conceal evidence of attorney misconduct and prevent Mr. Valencia from timely filing a § 2255 motion.  *Id.*

The Court referred Mr. Valencia's allegation that Mr. Cortez sold a copy of his case file to a member of the cartel to the Western District of Texas Disciplinary Panel for investigation. After a thorough investigation, the Disciplinary Panel's Screening Committee concluded that Mr. Valencia's allegation was unfounded.

On January 3, 2023, Mr. Valencia submitted a § 2255 Motion to prison officials for mailing.[3]  Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 306 ("First § 2255 Mot.").  Mr. Valencia styled the motion a "Protective Petition for Post-Conviction Relief" pursuant to § 2255.

---

[2] Mr. Valencia sought "trial transcripts, all discovery materials received by the attorney, all pre-trial and pre-sentencing discovery exchanges, any and all written and electronic correspondence between attorney and government, and anyone else related to [Mr. Valencia] along with other work notes, investigation notes and reports, witness interview notes and reports or other work product materials relevant to [Mr. Valencia]'s case."

[3] Although the Government states that the "postal stamp indicates [the § 2255 Motion] was deposited in the mail a few days later" than January 3, 2023, the Government concedes that the § 2255 Motion is timely filed. First Gov't Resp. at 3.

Mr. Valencia again complained that his trial and appellate attorneys refused to provide him a copy of his case file. The § 2255 Motion asserted four grounds for relief and sought to preserve numerous issues to assert in an amended motion upon receipt of the case file. The Government filed a Response to the § 2255 Motion, along with an affidavit from Mr. Cortez. First Gov't Resp., ECF No. 308.

Mr. Valencia then filed a motion for stay or abeyance of his § 2255 motion. Pro Se Mot. for Stay, ECF No. 309. Mr. Valencia continued to complain that neither his trial nor appellate counsel provided him a copy of his case file. He sought to stay the proceeding arguing that he planned to amend the § 2255 Motion with more information once he received his case file. Thereafter, the Court ordered Mr. Gonzalez to show cause why Mr. Valencia's case file should not be provided to him. ECF No. 310.

In response to the show-cause order, Mr. Gonzalez stated that he attempted to send documents responsive to Mr. Valencia's earlier requests to Mr. Valencia at the Federal Bureau of Prisons ("BOP") facility in Adelanto, California on or about September 2022, however the documents were returned. Resp. to Order to Show Cause, ECF No. 311. On August 1, 2023, the Court entered an order requiring Mr. Gonzalez to re-mail Mr. Valencia's case file to him. Court's Repl. to Resp. to Order to Show Cause, ECF No. 312. The Order included specific directions for how to mail the case file in accordance with BOP policy and discharged the prior show-cause order.

On July 2, 2024, the Court denied Mr. Valencia's motion for a stay and ordered Mr. Valencia to file an amended § 2255 motion within thirty days. Order of July 2, 2024, ECF No. 313. Thereafter, Mr. Valencia filed the pending Amended § 2255 Motion, asserting three grounds for relief. Am. Mot. to Vacate Under 28 U.S.C. § 2255, ECF No. 314 ("Am. § 2255 Mot."). The

Government filed a Response in opposition to the Amended § 2255 Motion. Second Gov't Resp., ECF No. 315. The Court has considered the specific grounds presented in the original and Amended § 2255 Motions and finds that Mr. Valencia has identified no basis for federal habeas relief.

## II.    LEGAL STANDARDS

### A. Motion to Vacate Under 28 U.S.C. § 2255

A federal defendant may move to vacate, set aside, or correct his sentence if: (1) the imposition of the sentence was in violation of the Constitution or the laws of the United States; (2) the District Court that imposed the sentence lacked jurisdiction; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Thus, § 2255 post-conviction relief is reserved for errors of constitutional dimension and other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a complete miscarriage of justice. *See, e.g., United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996).

### B. Ineffective Assistance of Counsel Under *Strickland v. Washington*

The Sixth Amendment of the United States Constitution guarantees criminal defendants the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 669 (1984). To successfully state a claim of ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate counsel's performance was deficient and the deficient performance prejudiced his defense. *Id.* at 687. The failure to establish either prong of the *Strickland* test compels a finding that counsel's performance was constitutionally effective. *Id.* at 696.

The proper standard for attorney performance is that of reasonably effective assistance. *Id.* at 688. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that, considering all the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id.* A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Id.* at 687–89. To determine whether counsel's performance was constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689. An attorney's strategic choices, usually based on information supplied by defendant and from a thorough examination of relevant facts and law, are virtually unchallengeable. *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998).

To demonstrate prejudice, the prisoner must demonstrate a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in its outcome. *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).
In the context of a trial "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Courts will not find inadequate representation merely because, with the benefit of hindsight, they disagree with counsel's strategic choices. *Strickland*, 466 U.S. at 689–90. A petitioner must demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687). "Thus, an analysis focusing solely on mere

10

outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or reliable, is defective." *Willis*, 273 F.3d at 598 (quoting *Lockhart*, 506 U.S. at 369).

## III.     DISCUSSION

### A.  Duress Defense and Leader/Organizer Role

Mr. Valencia asserts that Mr. Cortez rendered ineffective assistance of counsel for failing to investigate and present a duress defense at trial. Mr. Valencia asserts that he explained to Mr. Cortez that he was not a leader in the organization but was forced to work for the cartel based on threats of harm or death to his family. Mr. Valencia further alleges that the Government's main witness at trial corroborated that Mr. Valencia was not a leader but was coerced into working for the cartel through threats and intimidation. Mr. Valencia faults Mr. Cortez for failing to properly investigate and "follow up on these facts." First § 2255 Mot. at 5; Am. § 2255 Mot. at 7.[4]

In his sworn affidavit, Mr. Cortez responded to this claim as follows:

In his 2255 Motion, Mr. Delgado Valencia[5] states that I failed to properly prepare a duress defense for him. This is not true. I met with Mr. Delgado Valencia numerous times to discuss his case and to explore possible defenses. In particular, I met with Mr. Delgado Valencia on February 8, 2020 at the Karnes/GEO Detention Facility to cover the affirmative defense of duress.

During this meeting, I talked to Mr. Delgado Valencia about presenting the elements of the duress defense. However, Mr. Delgado Valencia denied any knowledge of the crime. In other words, Mr. Delgado Valencia stated he was innocent of the charges. Therefore, this created a conflict on what type of defense to raise at trial. He could either assert actual innocence or say he broke the law because he or his family were in imminent danger of seriously bodily injury or death. Accordingly, Mr. Delgado Valencia opted out of the duress defense and asserted actual innocence at trial. This was Mr. Delgado Valencia's decision.

---

[4] Mr. Valencia asserted this claim as Ground One of his original § 2255 Motion and Ground Three of his Amended § 2255 Motion.

[5] Mr. Cortez refers to the Movant as "Mr. Delgado Valencia."

Equally important, the duress defense presented serious legal hurdles for his defense. Namely, the discovery and evidence showed that the Cartel brought Mr. Delgado Valencia to San Antonio, Texas, to work off a drug debt. As a result, the evidence showed that Mr. Delgado Valencia either recklessly or negligently put himself in a position where he would be forced to perform the criminal conduct.

On top of that, Mr. Delgado Valencia did not turn himself in at his first opportunity. On the contrary, the discovery showed that Mr. Delgado Valencia cooked multiple batches of methamphetamine during the drug conspiracy. Consequently, I did not believe the trial court would give Mr. Delgado Valencia a duress defense instruction.

Furthermore, the only realistic way to present the duress defense would be for Mr. Delgado Valencia to testify in his own defense. However, this was a high-risk strategy that carried almost no benefit. Specifically, Mr. Delgado Valencia had a prior drug conviction in California state court for manufacturing methamphetamine. This meant the Government could cross-examine Mr. Delgado-Valencia on his prior drug conviction, which would have made this case even more difficult to win.

First Gov't Resp. at 2–4. Mr. Valencia fails to establish under *Strickland* that Mr. Cortez performed deficiently and that he was prejudiced as a result. Mr. Cortez avers that Mr. Valencia chose to opt out of the duress defense and assert actual innocence at trial. Nevertheless, insofar as Mr. Cortez advised Mr. Valencia against presenting a duress defense or declined to pursue a duress defense at trial, this amounted to sound trial strategy because the record demonstrates that Mr. Valencia was not entitled to one.

"Because duress is an affirmative defense, a defendant must present evidence of each of the elements of the defense before it may be presented to the jury." *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998). Duress requires proof that the defendant (1) was under "an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury"; (2) had not "recklessly or negligently placed himself in a situation" where he would likely "be forced to choose the criminal conduct"; (3) had no "reasonable legal alternative to violating the law; a chance both to refuse to do the

12

criminal act and also to avoid the threatened harm"; and (4) could reasonably anticipate a "direct causal relationship . . . between the criminal action taken and the avoidance of the threatened harm." *Id.* (internal quotation marks, alterations, and citation omitted). The defendant must prove each element by a preponderance of the evidence. *United States v. Willis*, 38 F.3d 170, 179 (5th Cir. 1994).

Aside from a vague reference to the testimony of a Government witness at trial, Mr. Valencia provides no factual or legal argument in the First or Amended § 2255 Motions to support his claim that he was not a leader of the organization and was instead forced to work for the cartel under duress. Nor does Mr. Valencia proffer any evidence to support this claim. Conclusory allegations of ineffective assistance of counsel are insufficient to warrant relief in a § 2255 motion. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding).

The record reflects that Mr. Valencia expressed some reservations about accepting a guilty plea at the *Lafler* hearing due to potentially endangering his family with the cartel, however he stated that he would sign a plea agreement if the Government offered a ten-year sentence. Hr'g. Trans. 10–11, ECF No. 267. At trial, Mr. Toca, Mr. Valencia's co-defendant, testified that Mr. Valencia told him another cartel leader threatened Mr. Valencia's family. Tr. Trans. at 51–52, ECF No. 266. Additionally, during Mr. Valencia's allocution at sentencing, Mr. Valencia stated that that he was brought here forcefully, and if he didn't do what the cartel wanted, they would kill his daughter and his family. Sent'g. Trans. at 18–19, ECF No. 298.

This is insufficient to establish entitlement to a duress defense, and the evidence at trial preponderates against a finding of duress. Witness testimony showed that Mr. Valencia incurred a drug debt while working for the cartel in Mexico and was brought to the United States by the

13

cartel to work off the debt. Tr. Trans. at 51–52, ECF No. 266. The testimony further established that Mr. Valencia was an active participant in the conspiracy—moving kilogram quantities of drugs for months. *Id.* at 53–54. Mr. Valencia sent money from drug proceeds to his family. Tr. Trans. at 74, ECF No. 268. He stayed at the automotive shop at times, had keys to the shop, and control of the facility. *Id.* at 27, 42. He had access to a vehicle. *Id.* at 72. He did not attempt to flee the cartel or contact law enforcement. Instead, he tried to evade law enforcement at the time of his arrest. *Id.* at 176.

Additionally, as Mr. Cortez explains in his affidavit, asserting a duress defense at trial presented potential risks—such as Mr. Valencia testifying in his own defense and admitting participation in the conspiracy—that Mr. Valencia was wise to avoid, given the low likelihood of success of a duress defense. For all of these reasons, to the extent Mr. Cortez advised against presenting a duress defense, this was sound trial strategy, not ineffective assistance.

The record also contradicts Mr. Valencia's contention that Mr. Cortez "failed to follow up" on Mr. Valencia's claim that he was not a leader in the organization but was forced to work for the cartel based on threats of harm or death to his family. Mr. Cortez vigorously challenged the leadership enhancement and argued during the course of the proceedings that the cartel threatened Mr. Valencia. Mr. Cortez filed a sentencing memorandum challenging the leadership enhancement and objected to the enhancement through oral argument at sentencing. The Court overruled the objection, finding that the evidence supported a leadership enhancement, and the Fifth Circuit affirmed the leadership enhancement on appeal. Accordingly, counsel did not fail to present this argument. Rather, the argument was unpersuasive in light of the evidence at trial. Additionally, at Mr. Valencia's sentencing, Mr. Cortez urged the Court to consider in applying the § 3553 sentencing factors that Mr. Valencia was not in a position to cooperate due to threats from

the cartel. Sent'g. Trans. at 15, ECF No. 298. Accordingly, the record reflects that counsel's performance was reasonable under the circumstances, and Mr. Valencia fails to demonstrate ineffective assistance of counsel.

### B. Discovery

Mr. Valencia further alleges that Mr. Cortez rendered ineffective assistance by failing to provide him with copies of the discovery in this case. Mr. Valencia also complains that Mr. Cortez failed to translate, review, and inform Mr. Valencia of the evidence that would be used against him at trial. Mr. Valencia asserts that, as a result, he was unable to participate in his own defense by identifying what was true or false about the charges against him, and he was unable to impeach the witnesses against him and disprove the facts against him at trial, in violation of his Fifth and Sixth Amendment rights.[6]

In his sworn affidavit, Mr. Cortez explains that the Government provided the discovery in this case on the condition that Mr. Cortez "not allow a copy of the materials to be disseminated to any other person, particularly the client who was incarcerated." First Gov't Resp. at 4. Mr. Cortez avers that he honored the Government's request, particularly because this was a cartel case, and he worried that if he did not do so he would put Mr. Valencia or another third party in danger. *Id.* And in any event, Mr. Cortez avers that he reviewed all of the evidentiary materials and discussed them with Mr. Valencia, including reading the police reports to Mr. Valencia in Spanish and playing Mr. Valencia the video of his post-arrest statements to police. The record reflects that Mr. Cortez asked the Court for permission to give Mr. Valencia copies of the discovery at a hearing on February 4, 2020. Hr'g Trans. at 12–13, ECF No. 267. Mr. Cortez explains that this was an

---

[6] Mr. Valencia asserted this claim in Grounds Two and Four of his original § 2255 Motion.

effort to "honor Mr. Delgado Valencia's request for paper copies of the discovery in his case." First Gov't Resp. at 4.

The Government objected to Mr. Valencia receiving physical copies of the discovery, citing his connection to the cartel, and the Court sustained the Government's objection. Hr'g. Trans. at 12–13, ECF No. 267. The Court was within its discretion to deny the discovery request, and Mr. Cortez was not ineffective for following this Court's order. There is nothing in the record to support Mr. Valencia's contention that Mr. Cortez failed to review the discovery with him. Accordingly, there is no evidence to support this claim of ineffective assistance of counsel.

## C. Case File Request

Mr. Valencia further alleges that both trial and appellate counsel have still failed to respond to his request for a copy of his case file.[7] This is not a cognizable ground for habeas relief. Moreover, as set forth previously in this Order, on August 1, 2023, the Court ordered Mr. Gonzalez, Mr. Valencia's appellate counsel, to re-mail a copy of Mr. Valencia's case file to him. Court's Repl. to Resp. to Order to Show Cause, ECF No. 312. Mr. Gonzalez did not indicate that the case file was rejected by the BOP or that he encountered any other issues sending the case file. Mr. Valencia did not file anything with the Court complaining that he had not received the case file until filing the pending Amended § 2255 Motion almost one year later. Accordingly, Mr. Valencia's complaint regarding the case file does not warrant any further action from the Court or any additional delay in this § 2255 proceeding.

## D. Conflict of Interest

Mr. Valencia further alleges that Mr. Cortez sold a copy of his case file and all other discovery related to his case in exchange for a sum of money to a person named "El Gringo" sent

---

[7] Mr. Valencia asserted this claim in Ground Two of the Amended § 2255 Motion.

by the cartel, which created a serious conflict of interest in violation of Mr. Valencia's Sixth

Amendment rights.[8]  But Mr. Valencia proffers nothing in the way of evidentiary support for this

allegation.  Nor does he point to anything in the record to corroborate this claim.  Moreover, the

Western District of Texas Disciplinary Panel concluded—following a thorough investigation—

that his claim was unfounded.  Mr. Valencia's unsupported allegation is insufficient to warrant

relief under § 2255.  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence

in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his

pro se petition[,] unsupported and unsupportable by anything else contained in the record, to be of

probative evidentiary value.").

### E.  Statute of Limitations

As a final matter, in its Response to the Amended § 2255 Motion, the Government appears

to assert that the Amended § 2255 Motion brings a "new claim related to his role as a leader in the

conspiracy," which "may not be timely."  Second Gov't Resp. at 1 n.1.  In Ground Three of the

Amended § 2255 Motion, Mr. Valencia asserts that "counsel failed to follow up on the fact at trial,

the Government's main witness who testified at trial against me corroborated the fact that I was

not a leader in the organization but instead that I was coerced into working for the cartel through

threats and intimidation."  Am. § 2255 Mot. at 7.  This is the same ineffective assistance of counsel

claim that Mr. Valencia asserted in Ground One of his original § 2255 Motion.  Because this claim

fails on the merits as set forth in this Memorandum Opinion, it is not necessary to address the

Government's statute of limitations or procedural bar arguments.

---

[8] Mr. Valencia asserted this claim in Ground Three of his original § 2255 Motion.

### Evidentiary Hearing

An evidentiary hearing on a § 2255 motion is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Because the issues presented in this case can be resolved on the basis of the record, the Court finds an evidentiary hearing is not required.

### Conclusion

Mr. Valencia's ineffective assistance of counsel claims are without merit. Accordingly, the Amended § 2255 Motion is **DENIED**.

### Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejects a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a [certificate of appealability] should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Mr. Valencia's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See id.* Thus, a certificate of appealability shall not be issued. A separate Order and Judgment consistent with this Memorandum Opinion shall issue this date.

Date: 12 August 2025

Royce C. Lamberth
United States District Judge